Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.**, *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

**NOTICE OF FILING OF EXHIBITS TO REAL ESTATE
PURCHASE CONTRACT FOR THE SALE OF THE WILMINGTON
<u>ASSEMBLY PLANT TO FISKER AUTOMOTIVE, INC. DATED JUNE 8, 2010</u>**

PLEASE TAKE NOTICE THAT on June 8, 2010, Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") filed the *Motion of Debtors Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Authorizing (I) the Sale of Wilmington Assembly Plant to Fisker Automotive, Inc. Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale, and (III) Motors Liquidation Company's Entry into a Settlement Agreement in Connection with the Sale* [Docket No. 5975] (the "**Motion**").

PLEASE TAKE FURTHER NOTICE THAT attached as Exhibit "A" to the Motion is a copy of that certain Real Estate Purchase Contract (the "**Contract**"), dated June 8, 2010, by and among MLC and Fisker Automotive, Inc.

PLEASE TAKE FURTHER NOTICE THAT annexed hereto are the exhibits to the Contract.

Dated: New York, New York
June 10, 2010

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBITS**

| | | |
|---|---|---|
| EXHIBIT A | - | Copy of Sale Approval Order |
| EXHIBIT B | - | Description of the Property |
| EXHIBIT C | - | Form of Escrow Agreement |
| EXHIBIT D | - | Form of Special Warranty Deed |
| EXHIBIT E | - | Form of Bill of Sale |
| EXHIBIT F | - | Form of FIRPTA Affidavit |
| EXHIBIT G | - | Form of Access Agreement |
| EXHIBIT H | - | Intentionally Omitted |
| EXHIBIT I | - | Environmental Documents |
| EXHIBIT J | - | Contracts to be Assumed and Assigned |

**EXHIBIT A**

**FORM OF SALE APPROVAL ORDER**

The Sale Approval Order is filed separately at Docket Number 5975.

**EXHIBIT B**

**DESCRIPTION OF THE PROPERTY**

801 Boxwood Road, Wilmington, DE 19804 (being designated as Tax Parcel Number 07-042.10-055) and 0 Terry Place, Wilmington, DE 19804 (being designated as Tax Parcel Number 07-042.20-010).

**Parcel 1 - 801 Boxwood Road, a/k/a 95 & 97 Dodson Avenue – Tax Parcel No.: 07-042.10-055:**

    **BEGINNING** at an iron with cap set on the easterly right of way line of Centreville Road and the southerly boundary line of the railroad lands, said point being the northwest corner of the herein described parcel; THENCE, leaving said point and running with the southerly boundary line of the said railroad lands the following six courses, (1) North 81°20'15" East a distance of 2514.76' to an iron pipe found; THENCE, (2) North 74°01'04" East a distance of 320.14' to an iron pipe found; THENCE, (3) North 81°17'50" East a distance of 949.59' to an iron pipe found; THENCE, (4) North 77°54'05" East a distance of 248.70' to a point; THENCE, (5) South 04°16'40" East a distance of 23.73' to an iron rod with cap set; THENCE, (6) South 20°26'16" West a distance of 141.33' to a concrete monument found on the westerly property line of the other lands of the General Motors Corporation (Deed Record B, Volume 74, Page 120); THENCE, running with the westerly property line of the other lands, (7) South 20°26'16" West a distance of 941.28' to a concrete monument found on the northerly property line of Paul Riebel (Instrument Number 20070727-0066682); THENCE, running with the northerly property line of the said Riebel lands and the northerly property lines of the Santos, McKay, Boxwood Coal Corp. and Reybold Venture Group lands, (8) North 80°52'43" West a distance of 696.65' to a pk nail found at the northerly end of Dodson Avenue; THENCE, running with the northerly end of Dodson Avenue, (9) North 81°46'56" West a distance of 20.01' to a pk nail found; THENCE, running with the westerly right of way line of Dodson Avenue, (10) South 08°25'33" West a distance of 1506.77' to an iron rod with cap set and a curve deflecting to the right with an arc length of 47.61', and a radius of 30.00'; THENCE, with the said curve the following chord bearing, (11) South 53°53'36" West, and chord length of 42.77' to a point on the northerly right of way line of Boxwood Road; THENCE, running with the northerly right of way line of Boxwood Road the following twenty three courses, (12) North 80°38'22" West a distance of 428.30' to a point; THENCE, (13) North 09°21'38" East a distance of 15.00' to a point; THENCE, (14) North 80°38'22" West a distance of 25.00' to a point; THENCE, (15) North 09°21'38" East a distance of 30.00' to a point; THENCE, (16) North 80°38'22" West a distance of 103.00' to a point; THENCE, (17) South 09°21'38" West a distance of 30.00' to a point; THENCE, (18) North 80°38'22" West a distance of 20.00' to a point; THENCE, (19) South 09°21'38" West a distance of 15.00' to a point; THENCE, (20) North 80°38'22" West a distance of 381.05' to a point and a curve deflecting to the left with an arc length of 274.04', and a radius of 3154.28'; THENCE, with the said curve the following chord bearing, (21) North 83°07'42" West, and a chord length of 273.95' to a point; THENCE, (22) North 85°37'02" West a distance

of 79.52' to a point; THENCE, (23) North 04°22'58" East a distance of 15.00' to a point; THENCE, (24) North 85°37'02" West a distance of 13.00' to a point; THENCE, (25) North 04°22'58" East a distance of 20.00' to a point; THENCE, (26) North 85°37'02" West a distance of 106.00' to a point; THENCE, (27) South 04°22'58" West a distance of 20.00' to a point; THENCE, (28) North 85°37'02" West a distance of 30.00' to a point; THENCE, (29) South 04°22'58" West a distance of 15.00' to a point; THENCE, (30) North 85°37'02" West a distance of 259.00' to a point; THENCE, (31) North 04°22'58" East a distance of 13.00' to a point; THENCE, (32) North 85°41'01" West a distance of 270.00' to a point, THENCE, (33) North 63°52'56" West a distance of 53.85' to a concrete monument found; THENCE, (34) North 83°59'56" West a distance of 170.07' to a point and the easterly right of way line of Centreville Road; THENCE, running with the easterly right of way line of Centreville Road the following eight courses, (35) North 45°51'15" West a distance of 88.74' to a point; THENCE, (36) North 06°58'23" West a distance of 472.00' to a concrete monument found; THENCE, (37) North 39°57'27" East a distance of 62.97' to a point; THENCE, (38) North 06°58'23" West a distance of 90.00' to a concrete monument found; THENCE, (39) North 55°14'59" West a distance of 48.97' to a concrete monument found; THENCE, (40) North 10°23'47" West a distance of 143.44' to a concrete monument found; THENCE, (41) North 21°05'16" West a distance of 305.27' to a concrete monument found and a curve deflecting to the left with an arc length of 399.49', and a radius of 1960.00'; THENCE, with the said curve the following chord bearing, (42) North 26°55'37" West, and a chord length of 398.80' to an iron rod with cap set and the place of beginning.

**Parcel 2 - 0 Terry Place -  Tax Parcel No.: 07-042.20-010**:

   **BEGINNING** at a concrete monument found at the intersection of Summit Road and Winston Place, said point being at the northwesterly corner of the intersection and on the easterly property line of the herein described parcel; THENCE, running with the westerly right of way line of Winston Place, (1) South 08°31'36" West a distance of 40.00' to an iron rod with cap set at the northeast property corner of the lands of James Cammock (Instrument Number 20040628-0070557); THENCE, leaving the westerly right of way line of Winston Place and running with the said Cammock lands the following two courses, (2) North 81°28'24" West a distance of 100.13' to an iron pipe found; THENCE, (3) South 08°31'38" West a distance of 100.00' to an iron rod with cap set on the northerly property line of the lands of Kenneth Norris (Instrument Number 20060821-0080039); THENCE, running with the northerly property line of the said Norris lands and the northerly property lines of the Stetka, Witkowski, CFC Properties, Kosinsk, Sandford, Casale, Testa, Buckley, Posczasy, and Riebel lands, (4) North 81°32'55" West a distance of 1085.59' to a concrete monument found and the easterly property line of the other lands of General Motors Corp. (Deed Book 45, Page 579); THENCE, running with the easterly property line of the other lands of General Motors Corp., (5) North 20°26'16" East a distance of 941.28' to a concrete monument found on the railroad lands; THENCE, with said railroad lands (6) North 87°22'44" East a distance of 104.01' to a point and the centerline of Little Mill Creek; THENCE, running with the centerline of Little Mill Creek the following six courses, (7) South 25°35'24" East a distance of 196.06' to a point; THENCE, (8) South 54°52'57" East a distance of 78.50' to a point; THENCE, (9) North 79°46'43" East a distance of 117.68' to a point; THENCE, (10) South 41°57'33" East a distance of 121.61' to a point; THENCE, (11) South 62°40'27" East

a distance of 185.52' to a point; THENCE, (12) South 76°31'00" East a distance of 245.01' to a point; THENCE, leaving the centerline of Little Mill Creek, (13) South 08°39'00" East a distance of 170.82' to a concrete monument found on the northerly property line of the lands of Crestmoor Swim Club (Deed Record I, Volume 65, Page 568) and a non tangent curve deflecting to the right with an arc length of 37.29', and a radius of 691.25'; THENCE, continuing with the Crestmoor Swim Club the following six courses, with the said curve the following chord bearing, (14) North 88°02'12" West, and a chord length of 37.29' to a iron rod with cap set and a curve deflecting to the right with an arc length of 305.46', and a radius of 423.42'; THENCE, with the said curve the following chord bearing, (15) North 65°29'35" West, and a chord length of 298.88' to an iron pipe found and a curve deflecting to the left with an arc length 51.47', and a radius of 1035.90'; THENCE, with the said curve the following chord bearing, (16) North 46°14'58" West, and a chord length of 51.46' to an iron rod with cap set and a non tangent curve deflecting to the left with an arc length of 162.94', and a radius of 325.00'; THENCE, with the said curve the following chord bearing, (17) South 22°51'32" West, and a chord length of 161.24' to an iron rod with cap set; THENCE, (18) South 08°31'33" West a distance of 270.00' to an iron rod with cap set; THENCE, (19)  South 81°28'24" East a distance of 440.13' to a concrete monument found and the place of beginning.

### Parcel 3 - 0 Terry Place -  Tax Parcel No.: 07-042.20-010:

   **BEGINNING** at a concrete monument found at the intersection of Summit Road and Winston Place, said point being at the northwesterly corner of the intersection and being the southeast corner of the lands of Crestmoor Swim Club (Deed Record I, Volume 65, Page 568) and the southwest corner of the herein described parcel; THENCE, running with the easterly property line of the said Crestmoor Swim Club lands the following three courses, (1) North 08°32'53" East a distance of 110.00' to an iron rod with cap set and a curve deflecting to the left with an arc length of 196.34', and a radius of 654.11'; THENCE, with the said curve the following chord bearing, (2) North 00°03'03" West, and a chord length of 195.60' to a point; THENCE, (3) North 08°38'58" West a distance of 12.94' to a point and a non tangent curve deflecting to the left with an arc length of 120.79', and a radius of 177.56'; THENCE, with the said curve the following chord bearing, (4) South 28°07'02" East, and a chord length of 118.47' to a iron rod with cap set on the westerly property line of the lands of Helen Lank (Deed Record G, Volume 126, Page 56) and a non tangent curve deflecting to the right with an arc length of 49.65', and a radius of 514.29'; THENCE, with the said curve the following chord bearing, (5) South 05°46'16" West, and a chord length of 49.63' to a point; THENCE, running with the said Lank lands and the westerly property line of the lands of Stephanie Vaughn (Instrument Number 20010425-0029946), (6) South 08°32'53" West a distance of 171.21' to an iron rod with cap set on the northerly right of way line of Summit Road; THENCE, running with the northerly right of way line of Summit Road, (7) North 81°22'59" West a distance of 40.08' to a concrete monument found and the place of beginning.

**EXHIBIT C**

**FORM OF ESCROW AGREEMENT**

# ESCROW AGREEMENT

| | |
|---|---|
| Escrow Agent: | First American Title Insurance Company |
| Seller: | Motors Liquidation Company, Debtor in Possession |
| Purchaser: | Fisker Automotive Inc. |
| Property: | Approximately 142 acres at 801 Boxwood Road, Wilmington, Delaware |
| Case #: | Not Applicable |

Concurrently with executing this Escrow Agreement, Seller and Purchaser are depositing with Escrow Agent:

(1)     Real Estate Purchase Contract dated May _____, 2010, between the Seller and Purchaser ("Purchase Agreement"); and

(2)     The Deposit, in the amount of $1,000,000.00, as that term is defined in the Purchase Agreement ("Escrow Funds").

The Escrow Funds represent the earnest money deposit recited in the Purchase Agreement. Escrow Agent will hold the Escrow Funds in an interest bearing account, insured by FDIC, for the benefit of Purchaser (whose tax identification or social security number is 26-0689075), for delivery under the following terms and conditions. Capitalized terms not defined herein shall have the meaning given them in the Purchase Agreement.

Disbursement at Closing. At the Closing, the Escrow Agent is authorized and directed to release the Escrow Funds as part of the Purchase Price to the Seller when the Escrow Agent is in receipt of satisfactory closing statements executed by Seller and Purchaser in consummation of the Purchase Agreement, and upon written instructions from Weil, Gotshal & Manges LLP (on behalf of Seller), and Orrick, Herrington & Sutliffe LLP (on behalf of Purchaser).

Disbursement to Purchaser on Certain Terminations of the Purchase Agreement. The Escrow Agent is authorized and directed to release the Escrow Funds to Purchaser when the Purchaser certifies to Escrow Agent that Purchaser has terminated the Purchase Agreement pursuant to the provisions of the Contract including Sections 3A (Declined Objections or Failure to Cure), 5 (Defects in Title), 9D (Failure to Close), 12 (Default), 14 (Risk of Loss), or 36 (Competing Transaction). Escrow Agent will not release the Escrow Funds until receipt of the same certification from Seller. If such certification from Seller is not provided, then Escrow Agent shall not release the Escrow Funds, and the provisions set forth in subparagraph F "Disagreement Between Parties" will be invoked.

Disbursement to Seller on Certain Terminations of the Purchase Agreement. The Escrow Agent is authorized and directed to release the Escrow Funds to Seller when the Seller certifies

to Escrow Agent that Seller has terminated the Purchase Agreement because of a Purchaser Default and that Seller is entitled to the Deposit pursuant to the provisions of the Contract including Section 12 (Default) of the Purchase Agreement. Escrow Agent will not release the Escrow Funds until receipt of the same certification from Purchaser. If such certification from Purchaser is not provided, then Escrow Agent shall not release the Escrow Funds, and the provisions set forth in subparagraph F "Disagreement Between Parties" will be invoked.

Holdback of Escrow. The Escrow Agent is authorized and directed to release an amount of the Escrow Funds up to $250,000 to the Title Company if the Escrow Agent receives a certification signed by Purchaser, Seller, and Title Company stating that Seller has failed to cure Title Objections pursuant to Section 3A of the Purchase Agreement.

Disbursement on Written Instructions. **The Escrow Agent is authorized and directed to release the Escrow Funds in accordance with any written instructions signed by both Seller and Purchaser.** It is understood and agreed that such written instructions shall clearly indicate the payee, method of delivery, and amount of payment.

Disagreement between Parties. In the event of any disagreement between the parties hereto resulting in conflicting instructions to or adverse claims or demands upon Escrow Agent with respect to the release of the Escrow Funds, the Escrow Agent shall refuse to comply with any such instructions, claim or demand so long as such disagreement shall continue, and in so refusing the Escrow Agent shall not release the Escrow Funds. The Escrow Agent shall not be or become liable in any way for its failure or refusal to comply with any such conflicting instructions or adverse claims or demands (except in the event of any gross negligence or willful misconduct on the part of Escrow Agent), and it shall be entitled to continue to refrain from acting until such conflicting instructions or adverse claims or demands: (1) shall have been adjusted by agreement and the Escrow Agent shall have been notified in writing thereof by Seller and Purchaser, or (2) shall have finally been determined by the Bankruptcy Court. The Escrow Agent, at its sole discretion, may file an interpleader action with the Bankruptcy Court. Upon depositing the Escrow Funds with the Bankruptcy Court, Escrow Agent shall be released from any further liability under this Agreement (except in the event of any gross negligence or willful misconduct on the part of Escrow Agent). In the event of a dispute, charges for reasonable attorneys' fees and court costs of Escrow Agent may be deducted from the Escrow Funds before the Escrow Funds are released to anyone or any court, under this paragraph (except in the event of any gross negligence or willful misconduct on the part of Escrow Agent).

Additional Provisions.

The term "Escrow Funds" as used in this Agreement includes all interest earned on the Escrow Funds. The Parties acknowledge and agree that the Escrow Funds held by Escrow Agent hereunder shall be deemed a "deposit account," as set forth in 13 PA CSA §9102 and/or as set forth in Cal. Com. Code §9102 (revised Article 9 of the Uniform Commercial Code). It is the intention of all Parties that Escrow Funds be maintained in a "deposit account" over which Escrow Agent has sole and total control, and that the depository institution receiving the "deposit account" shall follow any and all instructions originated by Escrow Agent as the secured party directing the disposition of the Escrow Funds in the "deposit account" without further consent by

Seller or Purchaser. Seller and Purchaser further acknowledge and agree that Escrow Agent shall be the sole signatory on the "deposit account" notwithstanding that the Escrow Funds are being held for the benefit of the Purchaser as set forth above. It is further agreed that a security interest in favor of Escrow Agent in the Escrow Funds is perfected by Insurer taking possession of the Escrow Funds.

As between Escrow Agent and the parties to the Purchase Agreement, in the event the Escrow Agent's duties under this Agreement shall conflict with any provision of the Purchase Agreement, this Escrow Agreement shall control.

Upon making delivery as required in this Agreement whether to Closing, or as agreed by the parties under paragraph F above, or into Bankruptcy Court in an Interpleader Action or as directed by the Bankruptcy Court, and performance of all other services included above, Escrow Agent shall thereupon be released and acquitted from any further liabilities concerning the Escrow Funds, it being expressly understood that such liability is in any event limited by the terms and conditions set forth here. Escrow Agent shall have no liability or responsibility to account to the Bankruptcy Court in the event the Escrow Funds are released to Seller under paragraph C or F above. By acceptance of this Escrow Agreement, the Escrow Agent is in no way assuming responsibility for the validity or authenticity of any documents or notices provided by Seller or Purchaser. Escrow Agent shall not be responsible for the loss of funds due to bank negligence or failure.

Seller and Purchaser agree, jointly and severally, to indemnify and hold harmless Escrow Agent from and against all losses including but not limited to reasonable attorneys' fees, and court costs which Escrow Agent may in good faith incur or sustain in connection with this Escrow Agreement, and waive any claim based on any reasonable and customary delay in the electronic wire transfer of funds (if applicable), except in each instance any losses incurred by Escrow Agent or Seller or Purchaser as a result of the gross negligence or willful misconduct of Escrow Agent, for which no right to make a claim is waived by Seller or Purchaser, and for which no indemnity is given hereunder.

These Escrow Instructions may be signed in counterpart and electronically delivered. Notices and instructions regarding these Escrow Instructions containing signed writings may be delivered electronically.

No additions, deletions or amendments may be made to this Escrow Agreement without the signed acceptance of Seller, Purchaser and Escrow Agent.

In the event the transaction does not close with the Escrow Agent named herein and/or a title insurance policy is not issued by the Escrow Agent named herein in connection with this transaction, then at the termination of this Escrow Agreement a fee of $250.00 is due and payable and may be deducted from the Escrow Funds for the services of the Escrow Agent under this Agreement upon the disbursement of the balance of the Escrow Funds in accordance with the Purchase Agreement, for which, (i) in the event of a termination of the Purchase Agreement, Seller agrees to reimburse Purchaser $125.00 provided the termination is not made by Seller as a result of a default by Purchaser under the Purchase Agreement, or for which Seller

agrees to reimburse Purchaser $250.00 provided the termination is made by Purchaser based on a default by Seller under the Purchase Agreement, or (ii) in the event of a Closing of the sale transaction under the Purchase Agreement, Purchaser agrees to reimburse Seller $125.00, in each case such reimbursement to be made within 15 days after such termination or closing, as applicable.

[signatures on page following]

**SELLER:**

**Motors Liquidation Company,
a Delaware corporation,
Debtor In Possession**

**PURCHASER:**

**Fisker Automotive Inc. a Delaware corporation**

By: _____
Its: _____

By: _____
Its: _____

**ESCROW AGENT:**

**First American Title Insurance Company**

By: _____
Its: _____

**NOTE: ESCROWED FUNDS WILL BE INVESTED IN AN INTEREST BEARING ACCOUNT UPON
RECEIPT BY ESCROW AGENT OF A FULLY EXECUTED ESCROW AGREEMENT AND A W-9**

**EXHIBIT D**

**SPECIAL WARRANTY DEED**

**[SPECIAL LIMITED WARRANTY ON LOCAL FORM TO BE PREPARED;
THIS FORM WILL BE MODIFIED FOR LOCAL LAW REQUIREMENTS]**

STATE OF _____          §
                              §          KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF _____            §

      THAT, MOTORS LIQUIDATION COMPANY, a Delaware corporation ("Grantor"), whose address is _____, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which consideration are hereby acknowledged, has GRANTED, SOLD AND CONVEYED and by these presents does hereby GRANT, SELL and CONVEY unto FISKER AUTOMOTIVE INC., a Delaware corporation ("Grantee"), whose address is 19 Corporate Park, Irvine, California 92606, the property more fully described on Exhibit A attached hereto and incorporated herein for all purposes by this reference (the "Property"), together with any and all improvements located thereon and all rights and appurtenances thereto in any wise belonging to Grantor.

      Grantor and certain of its affiliates filed a voluntary petition on June 1, 2009, for relief commencing a case under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (jointly administered under case no. 09-50026 (REG), and is conducting its business as a debtor-in-possession in accordance with the Bankruptcy Code, and on August 18, 2009, the Bankruptcy Court entered an order (the "Order"), authorizing Grantor to sell certain assets, of which the Property is part, a certified copy of which Order is attached hereto as Exhibit B and incorporated herein for all purposes by this reference.

      TO HAVE AND TO HOLD the above-described Property, together with all and singular the rights and appurtenances thereto in any wise belonging to Grantor, unto the said Grantee, its successors and assigns FOREVER, and Grantor does hereby bind itself and its successors and assigns to WARRANT AND FOREVER DEFEND all and singular the Property unto the said Grantee, its successors and assigns, against every person whomsoever, lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise.

      NOTWITHSTANDING THE FOREGOING, the issuance of the owner's policy of title insurance for Grantee shall be in lieu of any express or implied warranty of Grantor concerning title to the Property, and Grantee acknowledges and agrees that its only remedy for damages incurred by reason of any defect in title to the Property shall be against the issuer of its policy of title insurance.

SIGNATURES ON PAGE FOLLOWING

EXECUTED to be effective as of the _____ day of _____, 2010.

WITNESSES:                          GRANTOR:

                                    MOTORS LIQUIDATION COMPANY,
_____  a Delaware corporation
Name:


                                    By:_____
Name:_____      _____,

                                        _____


STATE OF _____     §
                            §
COUNTY OF _____       §

          I, the undersigned, a notary public in and for said county, in said state, hereby
certify that _____, whose name as the _____ of Motors
Liquidation Company, a Delaware corporation, is signed to the foregoing instrument, and who is
known to me, acknowledged before me on this day that, being informed of the contents of the
instrument, he, as such _____, and with full authority, executed the same
voluntarily for and as the act of said corporation.

          Given under my hand and official seal, this the _____ day of _____, 2010.


                                    _____
                                    Notary Public

          (PERSONALIZED SEAL)       Commission Expires:

D-2

**EXHIBIT A**

**to the Special Warranty Deed**

**<u>Description of Property</u>**

801 Boxwood Road, Wilmington, DE 19804 (being designated as Tax Parcel Number 07-042.10-055) and 0 Terry Place, Wilmington, DE 19804 (being designated as Tax Parcel Number 07-042.20-010).

**<u>Parcel 1 - 801 Boxwood Road, a/k/a 95 & 97 Dodson Avenue – Tax Parcel No.: 07-042.10-055:</u>**

**BEGINNING** at an iron with cap set on the easterly right of way line of Centreville Road and the southerly boundary line of the railroad lands, said point being the northwest corner of the herein described parcel; THENCE, leaving said point and running with the southerly boundary line of the said railroad lands the following six courses, (1) North 81°20'15" East a distance of 2514.76' to an iron pipe found; THENCE, (2) North 74°01'04" East a distance of 320.14' to an iron pipe found; THENCE, (3) North 81°17'50" East a distance of 949.59' to an iron pipe found; THENCE, (4) North 77°54'05" East a distance of 248.70' to a point; THENCE, (5) South 04°16'40" East a distance of 23.73' to an iron rod with cap set; THENCE, (6) South 20°26'16" West a distance of 141.33' to a concrete monument found on the westerly property line of the other lands of the General Motors Corporation (Deed Record B, Volume 74, Page 120); THENCE, running with the westerly property line of the other lands, (7) South 20°26'16" West a distance of 941.28' to a concrete monument found on the northerly property line of Paul Riebel (Instrument Number 20070727-0066682); THENCE, running with the northerly property line of the said Riebel lands and the northerly property lines of the Santos, McKay, Boxwood Coal Corp. and Reybold Venture Group lands, (8) North 80°52'43" West a distance of 696.65' to a pk nail found at the northerly end of Dodson Avenue; THENCE, running with the northerly end of Dodson Avenue, (9) North 81°46'56" West a distance of 20.01' to a pk nail found; THENCE, running with the westerly right of way line of Dodson Avenue, (10) South 08°25'33" West a distance of 1506.77' to an iron rod with cap set and a curve deflecting to the right with an arc length of 47.61', and a radius of 30.00'; THENCE, with the said curve the following chord bearing, (11) South 53°53'36" West, and chord length of 42.77' to a point on the northerly right of way line of Boxwood Road; THENCE, running with the northerly right of way line of Boxwood Road the following twenty three courses, (12) North 80°38'22" West a distance of 428.30' to a point; THENCE, (13) North 09°21'38" East a distance of 15.00' to a point; THENCE, (14) North 80°38'22" West a distance of 25.00' to a point; THENCE, (15) North 09°21'38" East a distance of 30.00' to a point; THENCE, (16) North 80°38'22" West a distance of 103.00' to a point; THENCE, (17) South 09°21'38" West a distance of 30.00' to a point; THENCE, (18) North 80°38'22" West a distance of 20.00' to a point; THENCE, (19) South 09°21'38" West a distance of 15.00' to a point; THENCE, (20) North 80°38'22" West a distance of 381.05' to a point and a curve deflecting to the left with an arc length of 274.04', and a radius of 3154.28'; THENCE, with the said curve the following chord bearing, (21) North 83°07'42"

West, and a chord length of 273.95' to a point; THENCE, (22) North 85°37'02" West a distance of 79.52' to a point; THENCE, (23) North 04°22'58" East a distance of 15.00' to a point; THENCE, (24) North 85°37'02" West a distance of 13.00' to a point; THENCE, (25) North 04°22'58" East a distance of 20.00' to a point; THENCE, (26) North 85°37'02" West a distance of 106.00' to a point; THENCE, (27) South 04°22'58" West a distance of 20.00' to a point; THENCE, (28) North 85°37'02" West a distance of 30.00' to a point; THENCE, (29) South 04°22'58" West a distance of 15.00' to a point; THENCE, (30) North 85°37'02" West a distance of 259.00' to a point; THENCE, (31) North 04°22'58" East a distance of 13.00' to a point; THENCE, (32) North 85°41'01" West a distance of 270.00' to a point, THENCE, (33) North 63°52'56" West a distance of 53.85' to a concrete monument found; THENCE, (34) North 83°59'56" West a distance of 170.07' to a point and the easterly right of way line of Centreville Road; THENCE, running with the easterly right of way line of Centreville Road the following eight courses, (35) North 45°51'15" West a distance of 88.74' to a point; THENCE, (36) North 06°58'23" West a distance of 472.00' to a concrete monument found; THENCE, (37) North 39°57'27" East a distance of 62.97' to a point; THENCE, (38) North 06°58'23" West a distance of 90.00' to a concrete monument found; THENCE, (39) North 55°14'59" West a distance of 48.97' to a concrete monument found; THENCE, (40) North 10°23'47" West a distance of 143.44' to a concrete monument found; THENCE, (41) North 21°05'16" West a distance of 305.27' to a concrete monument found and a curve deflecting to the left with an arc length of 399.49', and a radius of 1960.00'; THENCE, with the said curve the following chord bearing, (42) North 26°55'37" West, and a chord length of 398.80' to an iron rod with cap set and the place of beginning.

**Parcel 2 - 0 Terry Place - Tax Parcel No.: 07-042.20-010:**

      **BEGINNING** at a concrete monument found at the intersection of Summit Road and Winston Place, said point being at the northwesterly corner of the intersection and on the easterly property line of the herein described parcel; THENCE, running with the westerly right of way line of Winston Place, (1) South 08°31'36" West a distance of 40.00' to an iron rod with cap set at the northeast property corner of the lands of James Cammock (Instrument Number 20040628-0070557); THENCE, leaving the westerly right of way line of Winston Place and running with the said Cammock lands the following two courses, (2) North 81°28'24" West a distance of 100.13' to an iron pipe found; THENCE, (3) South 08°31'38" West a distance of 100.00' to an iron rod with cap set on the northerly property line of the lands of Kenneth Norris (Instrument Number 20060821-0080039); THENCE, running with the northerly property line of the said Norris lands and the northerly property lines of the Stetka, Witkowski, CFC Properties, Kosinsk, Sandford, Casale, Testa, Buckley, Posczasy, and Riebel lands, (4) North 81°32'55" West a distance of 1085.59' to a concrete monument found and the easterly property line of the other lands of General Motors Corp. (Deed Book 45, Page 579); THENCE, running with the easterly property line of the other lands of General Motors Corp., (5) North 20°26'16" East a distance of 941.28' to a concrete monument found on the railroad lands; THENCE, with said railroad lands (6) North 87°22'44" East a distance of 104.01' to a point and the centerline of Little Mill Creek; THENCE, running with the centerline of Little Mill Creek the following six courses, (7) South 25°35'24" East a distance of 196.06' to a point; THENCE, (8) South 54°52'57" East a distance of 78.50' to a point; THENCE, (9) North 79°46'43" East a distance of 117.68' to a point; THENCE,

(10) South 41°57'33" East a distance of 121.61' to a point; THENCE, (11) South 62°40'27" East a distance of 185.52' to a point; THENCE, (12) South 76°31'00" East a distance of 245.01' to a point; THENCE, leaving the centerline of Little Mill Creek, (13) South 08°39'00" East a distance of 170.82' to a concrete monument found on the northerly property line of the lands of Crestmoor Swim Club (Deed Record I, Volume 65, Page 568) and a non tangent curve deflecting to the right with an arc length of 37.29', and a radius of 691.25'; THENCE, continuing with the Crestmoor Swim Club the following six courses, with the said curve the following chord bearing, (14) North 88°02'12" West, and a chord length of 37.29' to a iron rod with cap set and a curve deflecting to the right with an arc length of 305.46', and a radius of 423.42'; THENCE, with the said curve the following chord bearing, (15) North 65°29'35" West, and a chord length of 298.88' to an iron pipe found and a curve deflecting to the left with an arc length 51.47', and a radius of 1035.90'; THENCE, with the said curve the following chord bearing, (16) North 46°14'58" West, and a chord length of 51.46' to an iron rod with cap set and a non tangent curve deflecting to the left with an arc length of 162.94', and a radius of 325.00'; THENCE, with the said curve the following chord bearing, (17) South 22°51'32" West, and a chord length of 161.24' to an iron rod with cap set; THENCE, (18) South 08°31'33" West a distance of 270.00' to an iron rod with cap set; THENCE, (19)  South 81°28'24" East a distance of 440.13' to a concrete monument found and the place of beginning.

## Parcel 3 - 0 Terry Place -  Tax Parcel No.: 07-042.20-010:

    **BEGINNING** at a concrete monument found at the intersection of Summit Road and Winston Place, said point being at the northwesterly corner of the intersection and being the southeast corner of the lands of Crestmoor Swim Club (Deed Record I, Volume 65, Page 568) and the southwest corner of the herein described parcel; THENCE, running with the easterly property line of the said Crestmoor Swim Club lands the following three courses, (1) North 08°32'53" East a distance of 110.00' to an iron rod with cap set and a curve deflecting to the left with an arc length of 196.34', and a radius of 654.11'; THENCE, with the said curve the following chord bearing, (2) North 00°03'03" West, and a chord length of 195.60' to a point; THENCE, (3) North 08°38'58" West a distance of 12.94' to a point and a non tangent curve deflecting to the left with an arc length of 120.79', and a radius of 177.56'; THENCE, with the said curve the following chord bearing, (4) South 28°07'02" East, and a chord length of 118.47' to a iron rod with cap set on the westerly property line of the lands of Helen Lank (Deed Record G, Volume 126, Page 56) and a non tangent curve deflecting to the right with an arc length of 49.65', and a radius of 514.29'; THENCE, with the said curve the following chord bearing, (5) South 05°46'16" West, and a chord length of 49.63' to a point; THENCE, running with the said Lank lands and the westerly property line of the lands of Stephanie Vaughn (Instrument Number 20010425-0029946), (6) South 08°32'53" West a distance of 171.21' to an iron rod with cap set on the northerly right of way line of Summit Road; THENCE, running with the northerly right of way line of Summit Road, (7) North 81°22'59" West a distance of 40.08' to a concrete monument found and the place of beginning.

**EXHIBIT B**

**to the Special Warranty Deed**

<u>Order</u>

**EXHIBIT E**

**FORM OF BILL OF SALE**

**KNOW ALL MEN BY THESE PRESENTS:**

That Motors Liquidation Company, a Delaware corporation, having an address at _____ ("**Seller**"), a debtor and debtor in possession in a jointly administered case pending under chapter 11 of title 11 of the United States Code (No. 09-50026 (REG)) in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration paid to Seller by Fisker Automotive Inc., a Delaware corporation, having an address at 19 Corporate Park, Irvine, California 92606 ("**Purchaser**"), the receipt and sufficiency of which are hereby acknowledged, does hereby sell, grant, convey and transfer to Purchaser all of Seller's right, title and interest in and to all the fixtures, machinery, equipment, mechanical and electrical systems and related equipment, inventory, supplies and other articles of personal property (collectively, the "**Personal Property**") which are attached or appurtenant to, or used in connection with, the real property more particularly described in Schedule 1 annexed hereto and made a part hereof (the "**Premises**"), in "AS IS" condition, subject to all faults.

**TO HAVE AND TO HOLD** the same unto Purchaser, its successors and assigns, forever, from and after the date hereof.

Purchaser hereby unconditionally waives any and all claims, actions, and causes of action of any nature whatsoever it may now or hereafter have against Seller, Seller's estate, or any disclosed or undisclosed officer, director, employee, trustee, shareholder, partner, principal, parent, subsidiary or other person or entity affiliated with Seller (collectively, "**Seller's Affiliates**"), and hereby unconditionally and irrevocably fully releases Seller, Seller's estate, and Seller's Affiliates from any and all liability whatsoever which may now or hereafter accrue in favor of Purchaser against Seller, Seller's estate, or Seller's Affiliates, in connection with or arising out of the Personal Property.

This Bill of Sale is made pursuant to an order entered by the Bankruptcy Court on [_____], authorizing Seller to sell certain real property and surplus assets, of which the Premises and Personal Property are part.

**IN WITNESS WHEREOF,** Seller and Purchaser have executed this Bill of Sale as of _____ ____, 2010.

**SELLER:**

MOTORS LIQUIDATION COMPANY,
a Delaware corporation

By:
Name:
Title:

**PURCHASER:**

FISKER AUTOMOTIVE, INC.
a Delaware corporation

By:
Name:
Title:

Schedule 1

Premises

**EXHIBIT F**

**FIRPTA AFFIDAVIT**
**NON-FOREIGN AFFIDAVIT UNDER**
**INTERNAL REVENUE CODE**
**SECTION 1445(b)(2)**

STATE OF _____          )
                                )  ss:
COUNTY OF _____           )

_____, being first duly sworn deposes and states under penalty of perjury:

    1.    That he is the _____ of Motors Liquidation Company, a Delaware corporation, the transferor of the property located at _____.

    2.    That the transferor's office address is at _____ _____.

    3.    That the United States taxpayer identification number for the transferor is _____.

    4.    That the transferor is not a "**foreign person**" as that term is defined in Section 1445(f) of the United States Internal Revenue Code of 1986, as amended (the "**Code**").

This affidavit is given to Fisker Automotive Inc., a Delaware corporation, the transferee of the property described in paragraph 1 above, and to First American Title Insurance Company, for the purpose of establishing and documenting the nonforeign affidavit exemption to the withholding requirement of Section 1445 of the Code. The transferor understands that this affidavit may be disclosed to the Internal Revenue Service by the transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

MOTORS LIQUIDATION COMPANY,
a Delaware corporation

By:
Name:
Title:

Subscribed and sworn to
before me this ____ day of
_____, 2010.

Notary Public: _____

# EXHIBIT G

# FORM OF ACCESS AGREEMENT

**TAX PARCEL NUMBERS:**
**07-042.10-055; and**
**07-042.20-010**

**PREPARED BY AND WHEN**
**RECORDED MAIL TO:**

Orrick, Herrington & Sutcliffe
1152 15th Street NW
Washington DC 20005
Attn.: Robert Lawrence, Esq.

Space above this line for recorder's use only

## ENVIRONMENTAL ACCESS AND EASEMENT AGREEMENT

dated as of _____, 2010

between

Fisker Automotive, Inc.,

and

Motors Liquidation Company

THIS ENVIRONMENTAL ACCESS AND EASEMENT AGREEMENT (this "**Agreement**") is made as of the _____ day of _____, 2010, between Fisker Automotive Inc., a Delaware corporation ("**Grantor**"), and Motors Liquidation Company, a Delaware corporation ("**Grantee**").

## R E C I T A L S

A.   WHEREAS, Grantor has purchased certain real property located in New Castle County, Delaware  , as more particularly described on **Exhibit A** annexed hereto (the "**Property**"), from Grantee.

B.   WHEREAS, on June 1, 2009, Grantee filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). Grantee's Chapter 11 case is being jointly administered with the Chapter 11 cases of certain of its affiliates under Case No. 09-50026 (REG) (the "**Case**").  Grantee is authorized to operate its business and manage its properties as a debtor in possession in accordance with the Bankruptcy Code.

C.   WHEREAS, Grantor and Grantee acknowledge that Grantee is attempting to resolve certain of its liabilities under environmental laws with the Delaware Department of Natural Resources and Environmental Control ("**DNREC**") and other governmental authorities through a multilateral settlement agreement to be filed in Grantee's bankruptcy Case No. 09-50026 (REG) ("**Global Settlement Agreement**") and that Grantee agreed to assume the obligation to perform any remedial action at the Property to the extent required of it under the Global Settlement Agreement.

D.   WHEREAS, Grantor and Grantee are parties to a Real Estate Purchase Contract with respect to the Property pursuant to which certain rights and obligations relating to post-closing access are set forth (the "**Purchase Contract**").

E.   WHEREAS, Grantor now wishes to grant to Grantee access to the Property to conduct such remedial action at the Property as may be necessary in order to comply with the Global Settlement Agreement.

NOW THEREFORE, for the purposes set forth above and in consideration of the recitals and mutual promises herein contained, Grantee and Grantor, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, hereby agree as follows:

1.   EASEMENT.

A.   <u>Grant of Easement.</u>  Grantor, on behalf of itself, its divisions, subsidiaries and affiliates, tenants, and its and their respective successors and assigns, hereby grants to Grantee

and its successors and assigns, a non-exclusive right, power and easement of access, ingress and egress to enter upon, occupy and use the Property (the "**Easement**"), rent free, for the limited purposes set forth in Paragraph 1.B, subject to all the terms and conditions set forth herein. Grantee's easement rights hereunder may be exercised by Grantee's employees, agents, contractors, sub-contractors, invitees, and licensees (collectively, "**Agents and Contractors**"), and shall include such access as is lawfully required by governmental agencies, including the United States Environmental Protection Agency, to supervise and oversee Grantee's activities described in Paragraph 1.B.

    B. <u>Limitation of Purpose.</u> The Easement rights and powers granted to Grantee in this Agreement do not, and shall not be interpreted to, obligate Grantee to exercise any of such rights and powers for any reason.  Nonetheless, Grantee may enter upon, occupy and use the Property or any portion thereof solely to perform any and all remedial actions required under the Global Settlement Agreement and for incidental purposes related thereto.  Activities permitted under this Agreement (to the extent authorized or required by the Global Settlement Agreement) shall include, but not be limited to: (i) performing general inspections, environmental sampling, tests, borings, surveys, engineering studies, soil studies, soil sampling, and/or groundwater studies; and (ii) other activities associated with investigation and/or remediation including, without limitation, excavations or cleanup operations, the installation, operation, maintenance and use of equipment, and installation of engineering controls, and withdrawal, treatment and re-injection of groundwater.

    C. <u>Equipment.</u> Grantee shall be responsible for ensuring that all equipment and other personal property utilized by and on behalf of Grantee at the Property will be used and stored safely and in compliance with this Agreement.

  2. DURATION AND TERMINATION.

    A. Grantee's rights hereunder shall be enforceable as a nonexclusive easement running with the land subject hereto, coupled with an interest, and enforceable against all tenants, licensees, successors and assigns of Grantor or third parties claiming an interest in the Property. It is intended that the rights, easements, covenants, agreements and promises set forth in this Agreement shall be construed as both covenants and conditions and that they shall run with the land and be affirmatively enforceable against the owners and users and occupiers of the Property. Any person claiming by, through or under Grantor, of all or a portion of the Property, shall automatically be deemed by acceptance of title thereto to have assumed all rights and obligations of Grantor created under this Agreement pertaining to such lands.  In the event of any conveyance of title to any of the Property, whether voluntarily or by operation of law, the Grantor (and any other granting party) shall be free and relieved of all obligations thereafter accruing hereunder.

    B. Grantee's rights and obligations hereunder shall automatically terminate upon the occurrence of any one of the following:

      (i) all investigative and remedial activities required of Grantee at or about the Property have been completed, Grantee has removed its personal property from the

Property, and the earlier of (x) DNREC issues a certificate of completion of remedy pursuant to the Delaware Hazardous Substance Cleanup Act and Grantee has completed all operations and maintenance activities, and/or (y) DNREC otherwise waives in writing as against Grantee, or releases in writing Grantee from, any and all further obligations for environmental remediation of the Property;

(ii)     Grantee terminates its rights and obligations hereunder by delivering ten (10) days' advance written notice to Grantor, or

(iii)     Grantee materially breaches its obligations hereunder and such breach is not cured within 180 days after receipt of written notice from Grantor to Grantee of such breach.

Within thirty (30) days following such termination, Grantee shall provide to Grantor an executed and acknowledged termination agreement in form acceptable to Grantor and Grantee for recordation in the Office of the Recorder of Deeds, in and for New Castle County, Delaware.

3 .     ACCESS AND ASSISTANCE.  Grantee's access to the Property shall be exercisable on reasonable advance notice to Grantor, but generally unrestricted during normal business hours or in the event of an emergency, and upon at least twenty-four (24) hours prior notice during non-business hours and shall include, without limitation, access, egress, ingress to and across all improvements, structures and facilities located on the Property to which access is reasonably required in connection with the Global Settlement Agreement solely for the purposes described in Section 1.B hereof.  Grantee and its Agents and Contractors shall not unreasonably interfere with Grantor's or its tenants' (or any future owner's, assignee's or successor's) access to or use of the Property, and shall comply with reasonable procedures established by Grantor to avoid interference with such operations.  Grantee and its tenants, licensees and Agents and Contractors shall conduct all activities on the Property in such manner and with reasonably appropriate safeguards undertaken by Grantee so as not to unreasonably interfere with the business activity of Grantor or to create a dangerous condition at the Property.  Grantor shall not impede, prevent or unreasonably interfere with Grantee's remedial activities that comply with this Agreement.  Except as set forth in this Section 3, Grantor is under no obligation to assist Grantee, and under no circumstances is Grantor required to expend any money to assist Grantee in the exercise of Grantee's rights hereunder.

4.     GENERAL TERMS.

A.     Liens.  Grantee agrees to keep the Property free and clear of any liens resulting from Grantee's activities at the Property.

B.     Insurance. Grantee shall maintain, and cause all of its Agents and Contractors to maintain, customary insurance appropriate for the activities being conducted at the Property, including standard liability and property and casualty policies covering personal injury and property damage in amounts of at least $1,000,000 per occurrence and $2,000,000 in the aggregate.  Grantor and any trustee or beneficiary under any deed of trust encumbering any portion of the Property of whom Grantee is given written notice shall each be named as

additional insured on such insurance policy or policies. Grantee shall provide Grantor with evidence of such insurance promptly following the request therefore by Grantor. DNREC shall not be named as an additional insured under any such insurance policies.

C.    Limitation. Grantee shall be liable to Grantor by reason of its activities under this Agreement solely for actual and direct damages. In no event shall Grantee be liable to Grantor for consequential damages or lost income, value or profits, or punitive or treble damages, or extraordinary damages, or penalties of any type or manner.

D.    Restoration. Following the earlier of the termination of this Agreement or the date on which any piece of equipment or personal property is no longer required to be used on the Property by Grantee, Grantee shall remove all equipment and other personal property placed on the Property by Grantee hereunder after the date hereof, and shall restore any portion of the Property which has been disturbed by Grantee's actions as reasonably practicable to substantially the condition existing prior to the date of such disturbance.

E.    Governing Law. This Access Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to conflicts of laws principles.

F.    **WAIVER OF JURY TRIAL**. EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

G.    **BANKRUPTCY COURT JURISDICTION**. THE PARTIES AGREE THAT, SO LONG AS THE GRANTEE HEREUNDER IS MOTORS LIQUIDATION COMPANY OR IS THE SUBJECT OF OR A PARTY TO ANY DISPUTE HEREUNDER, THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES ARISING UNDER THIS AGREEMENT RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT, AND (ii) ANY LIABILITY OF ANY PARTY HEREUNDER, AND THE PARTIES EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

H.    Entire Agreement. This Agreement contains the entire agreement between the parties concerning its subject matter, and supersedes and replaces all prior agreements and understandings with respect to Grantee's access to the Property.

I.    Paragraph Headings. The paragraph headings appearing herein are for the convenience of the parties and are not to be used or construed so as to modify the terms and conditions of this Agreement in any fashion.

J.    Successors, Assigns. This Agreement and the rights and obligations created as a result hereof shall run with the land and be binding upon and/or inure to the benefit of the parties hereto, as applicable, and their respective heirs, successors and assigns. The easements granted hereunder are non-exclusive easements in personam and shall be freely assignable by

Grantee solely to an entity or trust created pursuant to the Case to address certain of Grantee's cleanup obligations related to the remediation of Grantee's owned real property (the "**Environmental Response Trust**"), provided that the Environmental Response Trust also assumes Grantee's obligations hereunder.  In the event that Grantee assigns its interest in this Agreement to the Environmental Response Trust, (i) Grantor shall waive, release and forever discharge any claims, demands, suits, counterclaims, actions and causes of action it has, might have had or may have against Grantee, its directors, officers, shareholders, members, managers employees, agents, representatives, consultants, counsel, subsidiaries, affiliates, or other entities controlling, controlled by or under common control with respect to, arising out of or in connection with, directly or indirectly, this Agreement, and the Environmental Response Trust shall be entitled to, but not limited to, all of the rights, title and interests, and benefits and protections afforded Grantee under this Agreement, and (ii) Grantee shall waive, release and forever discharge any claims, demands, suits, counterclaims, actions and causes of action it has, might have had, or may have against Grantor, its directors, officers, shareholders, members, managers employees, agents, representatives, consultants, counsel, subsidiaries, affiliates, or other entities controlling, controlled by or under common control with respect to, arising out of or in connection with, directly or indirectly, this Agreement.

K.    Notice.  All notices and other communications hereunder shall be in writing and shall be delivered personally against receipt or shall be sent by certified United States Mail service, postage prepaid and return receipt requested, or by nationally utilized overnight delivery service, addressed to the parties as follows:

| | |
|---|---|
| As to Grantee: | Motors Liquidation Company<br>500 Renaissance Drive, 14th Floor<br>Detroit, Michigan 48265<br>Facsimile: 313-486-4259<br>Attn: Kyle Braden, Secretary |
| And a copy to: | Weil, Gotshal & Manges LLP<br>1300 Eye Street NW, Suite 900<br>Washington, D.C. 20005<br>Facsimile:  202-857-0940<br>Attn:  David R. Berz, Esq. |
| As to Grantor: | Fisker Automotive Inc.<br>19 Corporate Park<br>Irvine, California 92606<br>Facsimile: 949-757-4240<br>Attn: Frank Faga |
| With a copy to: | Orrick, Herrington & Sutcliffe LLP<br>1152 15th St. NW<br>Washington, DC 20005<br>Facsimile: 202-339-8500<br>Attn: Robert Lawrence |

Any notice made in accordance herewith shall be deemed received when personal, nationally utilized overnight delivery service, or courier delivery is received or refused. Additionally, notices may be given by telephone facsimile transmission, provided that an original copy of said transmission shall be delivered to the addressee by nationally utilized overnight delivery services for overnight delivery on the day following such transmission. Telephone facsimiles shall be deemed delivered on the date of such transmission.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have executed this Agreement on the date and year first written above.

**WITNESS:**

**GRANTEE**

**MOTORS LIQUIDATION COMPANY,**

a Delaware corporation

_____

By: _____

Name:

Title:

**WITNESS:**

**GRANTOR**

**FISKER AUTOMOTIVE INC.,**

a Delaware corporation

_____

By: _____

Name:

Title:

STATE OF _____

                           **SS:**

COUNTY OF _____

     On the _____ day of _____ , 20 , before a Notary Public in and for the State and County aforesaid, personally appeared _____ , who acknowledged himself to be the _____ of _____ , a _____ corporation, and that he, being authorized to do so, executed the foregoing Environmental Access and Easement Agreement for the purposes therein contained by signing the name of the corporation by himself as such officer

     WITNESS my hand and seal the day and year aforesaid.

                                      Print Name:_____
                                      My commission expires on: _____

STATE OF _____

                                 SS:

COUNTY OF _____

        On the _____ day of _____ , 20_, before a Notary Public in and for the State and County aforesaid, personally appeared _____ , who acknowledged himself to be the _____ of Motors Liquidation Company, debtor in possession, a Delaware corporation, and that he, being authorized to do so, executed the foregoing Environmental Access and Easement Agreement for the purposes therein contained by signing the name of the company by himself as such officer.

        WITNESS my hand and seal the day and year aforesaid.


                                       Print Name:_____

                                       My commission expires on: _____

## Exhibit A
## The Property

801 Boxwood Road, Wilmington, DE 19804 (being designated as Tax Parcel Number 07-042.10-055) and 0 Terry Place, Wilmington, DE 19804 (being designated as Tax Parcel Number 07-042.20-010).

### Parcel 1 - 801 Boxwood Road, a/k/a 95 & 97 Dodson Avenue – Tax Parcel No.: 07-042.10-055:

**BEGINNING** at an iron with cap set on the easterly right of way line of Centreville Road and the southerly boundary line of the railroad lands, said point being the northwest corner of the herein described parcel; THENCE, leaving said point and running with the southerly boundary line of the said railroad lands the following six courses, (1) North 81°20'15" East a distance of 2514.76' to an iron pipe found; THENCE, (2) North 74°01'04" East a distance of 320.14' to an iron pipe found; THENCE, (3) North 81°17'50" East a distance of 949.59' to an iron pipe found; THENCE, (4) North 77°54'05" East a distance of 248.70' to a point; THENCE, (5) South 04°16'40" East a distance of 23.73' to an iron rod with cap set; THENCE, (6) South 20°26'16" West a distance of 141.33' to a concrete monument found on the westerly property line of the other lands of the General Motors Corporation (Deed Record B, Volume 74, Page 120); THENCE, running with the westerly property line of the other lands, (7) South 20°26'16" West a distance of 941.28' to a concrete monument found on the northerly property line of Paul Riebel (Instrument Number 20070727-0066682); THENCE, running with the northerly property line of the said Riebel lands and the northerly property lines of the Santos, McKay, Boxwood Coal Corp. and Reybold Venture Group lands, (8) North 80°52'43" West a distance of 696.65' to a pk nail found at the northerly end of Dodson Avenue; THENCE, running with the northerly end of Dodson Avenue, (9) North 81°46'56" West a distance of 20.01' to a pk nail found; THENCE, running with the westerly right of way line of Dodson Avenue, (10) South 08°25'33" West a distance of 1506.77' to an iron rod with cap set and a curve deflecting to the right with an arc length of 47.61', and a radius of 30.00'; THENCE, with the said curve the following chord bearing, (11) South 53°53'36" West, and chord length of 42.77' to a point on the northerly right of way line of Boxwood Road; THENCE, running with the northerly right of way line of Boxwood Road the following twenty three courses, (12) North 80°38'22" West a distance of 428.30' to a point; THENCE, (13) North 09°21'38" East a distance of 15.00' to a point; THENCE, (14) North 80°38'22" West a distance of 25.00' to a point; THENCE, (15) North 09°21'38" East a distance of 30.00' to a point; THENCE, (16) North 80°38'22" West a distance of 103.00' to a point; THENCE, (17) South 09°21'38" West a distance of 30.00' to a point; THENCE, (18) North 80°38'22" West a distance of 20.00' to a point; THENCE, (19) South 09°21'38" West a distance of 15.00' to a point; THENCE, (20) North 80°38'22" West a distance of 381.05' to a point and a curve deflecting to the left with an arc length of 274.04', and a radius of 3154.28'; THENCE, with the said curve the following chord bearing, (21) North 83°07'42" West, and a chord length of 273.95' to a point; THENCE, (22) North 85°37'02" West a distance of 79.52' to a point; THENCE, (23) North 04°22'58" East a distance of 15.00' to a point; THENCE, (24) North 85°37'02" West a distance of 13.00' to a point; THENCE, (25) North

04°22'58" East a distance of 20.00' to a point; THENCE, (26) North 85°37'02" West a distance of 106.00' to a point; THENCE, (27) South 04°22'58" West a distance of 20.00' to a point; THENCE, (28) North 85°37'02" West a distance of 30.00' to a point; THENCE, (29) South 04°22'58" West a distance of 15.00' to a point; THENCE, (30) North 85°37'02" West a distance of 259.00' to a point; THENCE, (31) North 04°22'58" East a distance of 13.00' to a point; THENCE, (32) North 85°41'01" West a distance of 270.00' to a point, THENCE, (33) North 63°52'56" West a distance of 53.85' to a concrete monument found; THENCE, (34) North 83°59'56" West a distance of 170.07' to a point and the easterly right of way line of Centreville Road; THENCE, running with the easterly right of way line of Centreville Road the following eight courses, (35) North 45°51'15" West a distance of 88.74' to a point; THENCE, (36) North 06°58'23" West a distance of 472.00' to a concrete monument found; THENCE, (37) North 39°57'27" East a distance of 62.97' to a point; THENCE, (38) North 06°58'23" West a distance of 90.00' to a concrete monument found; THENCE, (39) North 55°14'59" West a distance of 48.97' to a concrete monument found; THENCE, (40) North 10°23'47" West a distance of 143.44' to a concrete monument found; THENCE, (41) North 21°05'16" West a distance of 305.27' to a concrete monument found and a curve deflecting to the left with an arc length of 399.49', and a radius of 1960.00'; THENCE, with the said curve the following chord bearing, (42) North 26°55'37" West, and a chord length of 398.80' to an iron rod with cap set and the place of beginning.

**Parcel 2 - 0 Terry Place -  Tax Parcel No.: 07-042.20-010**:

**BEGINNING** at a concrete monument found at the intersection of Summit Road and Winston Place, said point being at the northwesterly corner of the intersection and on the easterly property line of the herein described parcel; THENCE, running with the westerly right of way line of Winston Place, (1) South 08°31'36" West a distance of 40.00' to an iron rod with cap set at the northeast property corner of the lands of James Cammock (Instrument Number 20040628-0070557); THENCE, leaving the westerly right of way line of Winston Place and running with the said Cammock lands the following two courses, (2) North 81°28'24" West a distance of 100.13' to an iron pipe found; THENCE, (3) South 08°31'38" West a distance of 100.00' to an iron rod with cap set on the northerly property line of the lands of Kenneth Norris (Instrument Number 20060821-0080039); THENCE, running with the northerly property line of the said Norris lands and the northerly property lines of the Stetka, Witkowski, CFC Properties, Kosinsk, Sandford, Casale, Testa, Buckley, Posczasy, and Riebel lands, (4) North 81°32'55" West a distance of 1085.59' to a concrete monument found and the easterly property line of the other lands of General Motors Corp. (Deed Book 45, Page 579); THENCE, running with the easterly property line of the other lands of General Motors Corp., (5) North 20°26'16" East a distance of 941.28' to a concrete monument found on the railroad lands; THENCE, with said railroad lands (6) North 87°22'44" East a distance of 104.01' to a point and the centerline of Little Mill Creek; THENCE, running with the centerline of Little Mill Creek the following six courses, (7) South 25°35'24" East a distance of 196.06' to a point; THENCE, (8) South 54°52'57" East a distance of 78.50' to a point; THENCE, (9) North 79°46'43" East a distance of 117.68' to a point; THENCE, (10) South 41°57'33" East a distance of 121.61' to a point; THENCE, (11) South 62°40'27" East a distance of 185.52' to a point; THENCE, (12) South 76°31'00" East a distance of 245.01' to a point; THENCE, leaving the centerline of Little Mill Creek, (13) South 08°39'00" East a distance

of 170.82' to a concrete monument found on the northerly property line of the lands of Crestmoor Swim Club (Deed Record I, Volume 65, Page 568) and a non tangent curve deflecting to the right with an arc length of 37.29', and a radius of 691.25'; THENCE, continuing with the Crestmoor Swim Club the following six courses, with the said curve the following chord bearing, (14) North 88°02'12" West, and a chord length of 37.29' to a iron rod with cap set and a curve deflecting to the right with an arc length of 305.46', and a radius of 423.42'; THENCE, with the said curve the following chord bearing, (15) North 65°29'35" West, and a chord length of 298.88' to an iron pipe found and a curve deflecting to the left with an arc length 51.47', and a radius of 1035.90'; THENCE, with the said curve the following chord bearing, (16) North 46°14'58" West, and a chord length of 51.46' to an iron rod with cap set and a non tangent curve deflecting to the left with an arc length of 162.94', and a radius of 325.00'; THENCE, with the said curve the following chord bearing, (17) South 22°51'32" West, and a chord length of 161.24' to an iron rod with cap set; THENCE, (18) South 08°31'33" West a distance of 270.00' to an iron rod with cap set; THENCE, (19)  South 81°28'24" East a distance of 440.13' to a concrete monument found and the place of beginning.

### Parcel 3 - 0 Terry Place -  Tax Parcel No.: 07-042.20-010:

**BEGINNING** at a concrete monument found at the intersection of Summit Road and Winston Place, said point being at the northwesterly corner of the intersection and being the southeast corner of the lands of Crestmoor Swim Club (Deed Record I, Volume 65, Page 568) and the southwest corner of the herein described parcel; THENCE, running with the easterly property line of the said Crestmoor Swim Club lands the following three courses, (1) North 08°32'53" East a distance of 110.00' to an iron rod with cap set and a curve deflecting to the left with an arc length of 196.34', and a radius of 654.11'; THENCE, with the said curve the following chord bearing, (2) North 00°03'03" West, and a chord length of 195.60' to a point; THENCE, (3) North 08°38'58" West a distance of 12.94' to a point and a non tangent curve deflecting to the left with an arc length of 120.79', and a radius of 177.56'; THENCE, with the said curve the following chord bearing, (4) South 28°07'02" East, and a chord length of 118.47' to a iron rod with cap set on the westerly property line of the lands of Helen Lank (Deed Record G, Volume 126, Page 56) and a non tangent curve deflecting to the right with an arc length of 49.65', and a radius of 514.29'; THENCE, with the said curve the following chord bearing, (5) South 05°46'16" West, and a chord length of 49.63' to a point; THENCE, running with the said Lank lands and the westerly property line of the lands of Stephanie Vaughn (Instrument Number 20010425-0029946), (6) South 08°32'53" West a distance of 171.21' to an iron rod with cap set on the northerly right of way line of Summit Road; THENCE, running with the northerly right of way line of Summit Road, (7) North 81°22'59" West a distance of 40.08' to a concrete monument found and the place of beginning.

**EXHIBIT H**

**Intentionally Omitted**

# EXHIBIT I

## ENVIRONMENTAL DOCUMENTS

**Documents provided by MLC**
**Former GM Boxwood Road Plant**

| Title of Report/Document | Date of Report | Author |
|---|---|---|
| Draft RCRA Facility Assessment | 12/23/1988 | CDM |
| Letter to confirm RCRA Closure | 10/9/1992 | DNREC |
| Liability Assessment Report | 8/20/1996 | GM |
| Title V Air Permit | 10/1/1999 | DNREC |
| NPDES Permit and Fact Sheet | 9/15/2003 | DNREC-Div of Water Resources |
| Letter to GM RE: Report of Findings for OU-1 Soils | 1/15/2004 | DNREC-SIRB |
| OU-2 Bulk Product Tank Area Soils Investigation | 2/1/2006 | CRA |
| Wastewater Discharge Permit WDP 76-018 | 7/1/2006 | NCC - Dept of Special Services |
| UST - AST Certificate of Insurance | 9/1/2007 | unknown |
| Encore Project Summary Form | 5/30/2008 | unknown |
| Proposed Plan of Remedial Action | 11/1/2008 | DNREC |
| Waste Water Discharge Permit | 1/12/2009 | New Castle County - Dept. of Special Services |
| GW RI/FS OU-2 Bulk Product Tank Area | 1/26/2009 | CRA |
| UST Certificate of Insurance | 4/1/2009 | unknown |
| OU-2 GW Data Map | 4/1/2009 | CRA |
| DNREC to GM letter RE: Future Work | 5/29/2009 | DNREC |
| AST Closure Document -4 ASTs | 8/1/2009 | CRA |
| GM to DNREC response to 5/29/09 letter | 8/11/2009 | GM |
| DNREC AST NFA for Tanks A, B, C | 9/25/2009 | DNREC |
| Tank F Investigation Work Plan | 11/11/2009 | CRA |
| Phase I Environmental Site Assessment | 2/1/2010 | CRA |
| Tank F Investigation Report | March 2010 | CRA |

# EXHIBIT J

## CONTRACTS TO BE ASSUMED AND ASSIGNED

Agreement between Delmarva Power & Light Company and General Motors Corporation for the Supply of Electrical Energy and Substation Facilities, dated April 27, 1972.

Lease between General Motors Corporation and Delmarva Power & Light Company, dated January 24, 1973.