THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
MOTORS LIQUIDATION COMPANY, <u>ET AL</u>.
CASE NO. 09-50026 (BANKR. S.D.N.Y.)

December 10, 2010

TO: ALL HOLDERS OF GENERAL UNSECURED CLAIMS AGAINST MOTORS LIQUIDATION COMPANY, <u>ET AL</u>. ("***Debtors***") ENTITLED TO VOTE (Holders of General Unsecured Claims in Class 3)

FROM: THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY, <u>ET AL</u>. (the "***Creditors' Committee***")[1]

The Creditors' Committee, which represents the interests of all unsecured creditors in the Debtors' chapter 11 bankruptcy cases, recommends that you vote ***FOR*** the Debtors' Amended Joint Chapter 11 Plan (the "***Plan***")[2] by checking the box on your official Ballot that says:

## ACCEPT the Plan

and returning your Ballot in accordance with the voting instructions described in the Ballot and the voting procedures order accompanying the amended disclosure statement with respect to the Debtors' Plan (the "**Disclosure Statement**") and the Plan.

On June 1, 2009, the Debtors filed for bankruptcy protection. On June 3, 2009, the United States Trustee for the Southern District of New York appointed the Creditors' Committee to represent the interests of unsecured creditors in the Debtors' chapter 11 cases.

On July 10, 2009, the Debtors closed the sale of substantially all their assets to NGMCO, Inc. ("**New GM**") pursuant to section 363 of the Bankruptcy Code (the "**363**

---

[1] The nine current members of the Creditors' Committee are: (1) Wilmington Trust Company, as Indenture Trustee, (2) Law Debenture Trust Company of New York, as Indenture Trustee, (3) The Industrial Division of Communications Workers of America, AFL-CIO, (4) International Union, United Automobile Aerospace and Agricultural Implement Workers of America, (5) United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, (6) Inteva Products, LLC, (7) Serra Chevrolet of Birmingham, Inc, (8) Genoveva Bermudez, and (9) Kevin Schoenl.

As a result of the consummation of the 363 Transaction, five Committee members – Pension Benefit Guaranty Corporation, Interpublic Group, Paddock Chevrolet, Saturn of Hempstead, Inc. and DENSO International America, Inc. – have resigned from the Creditors' Committee. As a result of being appointed to the official committee of unsecured creditors holding Asbestos Personal Injury Claims, Mark Butita resigned from the Creditors' Committee.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

KL2 2670600.5         1

**Transaction**"). Pursuant to the Master Sale and Purchase Agreement, New GM issued to the Debtors approximately 10% of New GM stock, and two sets of warrants for additional New GM shares representing, collectively, an additional 15% of New GM stock. The Debtors are now known as Motors Liquidation Company.

If the aggregate allowed general unsecured claims against the Debtors' estates are between $35 billion and $42 billion, New GM will issue *up to* an additional 2% of its stock to the Debtors. The New GM stock and warrants are known as the "**New GM Securities**".

The Creditors' Committee has played an active role in these cases in an effort to obtain the best possible recovery for the claims of unsecured creditors. The enclosed Plan is the product of intense negotiations between the Creditors' Committee, the Debtors, the U.S. Treasury, and other parties.

Under the facts and circumstances of these cases, the Creditors' Committee believes that the Plan provides the best recovery for unsecured creditors as a whole and that acceptance of the Plan will expedite distributions to general unsecured creditors.[3]

On August 31, 2010, the Debtors filed the Plan and a Disclosure Statement related to the Plan. The Debtors filed an amended Plan and Disclosure Statement on December 7, 2010. On December 8, 2010, Bankruptcy Court found that the Disclosure Statement contained adequate information and approved it. The Debtors now seek acceptance of the Plan from their creditors.

Pursuant to the Plan, holders of Allowed General Unsecured Claims will receive the following:[4]

- An initial distribution of New GM Securities, based on the creditor's pro rata share of the total remaining general unsecured claims asserted against the estate. The creditor's pro rata share will be calculated by taking the amount of the creditor's claim and dividing it by the sum of (x) the general unsecured claims allowed at the time *plus* (y) the maximum amount of disputed general unsecured claims.

- GUC Trust Units (units in a trust established for the benefit of unsecured creditors, known as the "**GUC Trust**") which entitle the creditor to

---

[3] As of the date of this letter, there are still certain open issues under the Plan, including whether unsecured creditors are entitled to receive distributions from the proceeds of the Term Loan Avoidance Action. While the Creditors' Committee is hopeful that these issues will be resolved prior to confirmation of the Plan, the Creditors' Committee reserves all rights to object to the Plan on these or other grounds.

[4] The summary of distributions to general unsecured creditors is qualified in its entirety by the language of the Plan, the Disclosure Statement and the GUC Trust Agreement.

2

      potentially receive additional New GM Securities as disputed general unsecured claims are disallowed or otherwise resolved.

For example, if on the initial distribution date, a general unsecured creditor's claim is 1% of the total remaining general unsecured claims (allowed and disputed), that creditor will receive on the initial distribution date 1% of the New GM Securities held by the GUC Trust. If by the end of the case, because certain disputed claims are disallowed or reduced, the creditor's claim is 1.5% of the **final** amount of Allowed General Unsecured Claims, subsequent distributions of an additional 0.5% of the New GM Securities will be made from the GUC Trust in respect of the GUC Trust Units received by the creditor.

      In addition, the Creditors' Committee believes that holders of Allowed General Unsecured Claims are also entitled to the proceeds, if successful, of the Term Loan Avoidance Action (litigation commenced by the Creditors' Committee against certain prepetition secured lenders seeking to recover up to $1.5 billion). However, there can be no assurance that the Term Loan Avoidance Action will succeed, so recoveries may be zero. Even if the Term Loan Avoidance Action succeeds, the U.S. Treasury and Export Development Canada (the "DIP Lenders") have recently asserted an interest in the Term Loan Avoidance Action. It is still an open question under the Plan as to whether general unsecured creditors or the DIP Lenders will receive proceeds, if any, from the Term Loan Avoidance Action. We direct your attention to Section III C of the Disclosure Statement entitled "Overview of the Plan - Description and Summary Table of Classification and Treatment of Claims and Equity Interests Under the Plan" detailing certain risk factors associated with the Term Loan Avoidance Action for more information.

      As noted in the Disclosure Statement, the Debtors and the Creditors' Committee continue to evaluate the most efficient and equitable manner to effectuate distributions to the holders of General Unsecured Claims and it is possible that the distribution mechanics (specifically dealing with fractional shares and the use of GUC Trust Units) set forth in the Plan and Disclosure Statement may be amended prior to a Confirmation Hearing. The Creditors' Committee further notes that, unlike other chapter 11 plans, there is no available cash to pay out a convenience class for claims below a certain threshold. It is possible that holders of smaller allowed unsecured claims may not receive certain distributions due to rounding. However, unsecured creditors have the option of selling their claims for cash to a claims buyer *outside* the Plan process. You can find further information on selling claims, along with a list of potential claims buyers that have either appeared in these Chapter 11 Cases or have expressed an interest in buying and selling unsecured claims on the Creditors' Committee website at: www.motorsliquidationcreditorscommittee.com. **PLEASE NOTE that the Creditors' Committee makes no recommendation as to whether you should sell your claim to a claims buyer.** If you are considering selling your claim, the Creditors' Committee recommends that you contact more than one buyer before deciding to sell and that you check the public trading prices of the larger issues of the Motors Liquidation Company's unsecured bonds.

      The size of the claims pool will materially affect the distribution any general unsecured creditor will receive on its claim. At the Disclosure Statement hearing, the Bankruptcy Court authorized the Creditors' Committee to disclose additional information on the likely estimated size of the general unsecured claims pool. Attached as **Exhibit A** is a chart prepared

3

by FTI Consulting, Inc., financial advisor to the Creditors' Committee (with feedback from counsel to the Creditors' Committee and the Debtors), showing the likely estimated range of Allowed General Unsecured Claims in certain categories as of November 11, 2010. **PLEASE NOTE THAT THIS INFORMATION IS SUBJECT TO CHANGE AND CANNOT BE RELIED ON AS THE ACTUAL FINAL AMOUNT OF GENERAL UNSECURED CLAIMS THAT WILL BE ALLOWED OR RESERVED FOR**. The Creditors' Committee will post this letter on its website at www.motorsliquidationcreditorscommittee.com and, if it determines it is prudent to do so, may (in its own discretion, although without any obligation) update the claims information contained in Exhibit A hereto. **PLEASE FURTHER NOTE THAT THIS INFORMATION REPRESENTS THE CREDITORS' COMMITTEE'S VIEW ON GENERAL UNSECURED CLAIMS BASED ON ANALYSIS TO DATE. THE CREDITORS' COMMITTEE ASSUMES NO OBLIGATION TO UPDATE ITS ANALYSIS AND WILL IN ANY EVENT CEASE TO EXIST UPON CONSUMMATION OF THE PLAN. THIS INFORMATION IS NOT ENDORSED BY THE DEBTORS OR ANY OTHER ENTITY.**

The Disclosure Statement also contains _**record dates**_ and _**deadlines**_ that are important, including (but not limited to) the following:

_**December 7, 2010**_ is the _**record date for voting**_. You can only vote claims you held on December 7, 2010. In addition, December 7, 2010 is the record date for receiving the Confirmation Hearing Notice and a Notice of Non-Voting Status, if applicable. You will only receive such notices if you held claims on December 7, 2010.

_**February 11, 2011 at 4:00 p.m. (Eastern Time)**_ is the _**Voting Deadline**_ for the Debtors' voting agent to receive Ballots and the _**objection deadline**_ for objections to confirmation of the Plan.

_**March 3, 2011**_ is the date for the _**hearing on the confirmation**_ of the Plan (please note that the confirmation hearing may be adjourned).

Please review the Disclosure Statement for other dates and deadlines that may be important to you.

**The Creditors' Committee urges each holder of a general unsecured Claim in Class 3 to accept the Plan and timely return its Ballot indicating its acceptance in accordance with the voting instructions described in the Disclosure Statement and Ballot. Notwithstanding our recommendation, each creditor (including individual Creditors' Committee members) must make its own independent determination as to whether the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisors(s).**

If you have questions, please contact us at the Creditors' Committee's website, _**www.motorsliquidationcreditorscommittee.com**_ or the Creditors' Committee hotline at: (212) 715-3275.

If you have specific questions about Exhibit A (the chart showing the likely range of Allowed General Unsecured Claims) please contact FTI Consulting, Inc. at (404) 460-6200.

Very truly yours,

The Official Committee of Unsecured
Creditors of Motors Liquidation Company, et al.

5

**EXHIBIT A**

6

*Prepared at the Request of Counsel*

## Motors Liquidation Company, et al.

PLEASE NOTE THAT THIS INFORMATION IS SUBJECT TO CHANGE AND CANNOT BE RELIED ON AS THE ACTUAL AMOUNT OF UNSECURED CLAIMS THAT WILL BE ALLOWED OR RESERVED FOR.

PLEASE FURTHER NOTE THAT THIS INFORMATION REPRESENTS THE CREDITORS' COMMITTEE'S VIEW ON UNSECURED CLAIMS BASED ON ANALYSIS TO DATE, AND SUCH INFORMATION IS NOT ENDORSED BY THE DEBTORS.

**Unsecured Claims as of December 1, 2010**

| In US$ billions | Remaining Claims[1] | | Estimated Range[2] | |
|---|---|---|---|---|
| | Total | Count | Low | High |
| **Category** | | | | |
| Debt | $30.0 | 34 | $28.3 - | $29.9 |
| Environmental | 4.8 | 275 | 1.0 - | 2.0 |
| Asbestos | 2.9 | 28,563 | 0.1 - | 2.0 |
| Litigation | 3.3 | 2,505 | 1.5 - | 2.5 |
| Employee | 1.0 | 4 | 1.0 - | 1.3 |
| Executory Contracts | 1.6 | 221 | 0.8 - | 1.6 |
| Accounts Payable | 0.1 | 749 | 0.0 - | 0.1 |
| Workers Compensation | 0.0 | 19 | 0.0 - | 0.0 |
| Other[3] | 0.1 | 120 | 0.0 - | 0.0 |
| Total | $43.7 | 32,490 | $32.7 - | $39.4 |

**Notes:**

(1) Claims remaining after pending and anticipated future objections.
(2) There is a potential for an additional unsecured claim of up to approximately $1.5 billion if the Committee is successful in the Term Loan Adversary Proceeding.
(3) Includes Tax, Equityholders, Customers and Other.